**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **MICHAEL P.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 7:19–CV–00505** |
| | ) |
| **ANDREW SAUL, COMMISSIONER,** | ) |
| **SOCIAL SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Michael P. ("Michael") filed this action challenging the final decision of the

Commissioner of Social Security finding him not disabled and therefore ineligible for

supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

("Act"). 42 U.S.C. §§ 1381–1383f; R. 10–20. Specifically, Michael argues that substantial

evidence does not support the ALJ's RFC findings and assessment of his subjective allegations. I

conclude that substantial evidence supports the ALJ's opinion. Accordingly, I **RECOMMEND**

**GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 13), **DENYING**

Michael's Motion for Summary Judgment (Dkt. 10), and **DISMISSING** this case from the

court's docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Michael was not disabled under the Act.[2] Mastro v.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability

Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[ ]

to an existing administrative record and ask[ ] whether it contains 'sufficien[t] evidence' to

support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

"The threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. The

final decision of the Commissioner will be affirmed where substantial evidence supports the

decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

On November 30, 2015, Michael protectively filed an application for SSI, alleging

disability beginning August 1, 2013. R. 198–207. He alleged disability from heart attack, status

post heart attack, status post aneurysm, pain in neck radiating down in low back and legs,

numbness and pain in legs, right hip pain, osteoarthritis, fatigue, and bilateral hands, shoulder,

and knee pain. R. 224. The state agency denied the claim initially and on reconsideration. R. 93–

98, 102–105. The ALJ convened a hearing on June 13, 2018, at which Michael and a vocational

expert testified. R. 36–59.

On July 18, 2018, the ALJ issued a decision analyzing Michael's claims under the

familiar five–step process[3] and denying his claim for benefits. R. 10–20. The ALJ found that

---

under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her
ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent
her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See
42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five–step process to evaluate a disability claim requires the Commissioner to ask, in sequence,
whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the

Michael had not engaged in substantial gainful activity since November 30, 2015. R. 12. The
ALJ determined that Michael suffered from the severe impairments of degenerative disc disease,
history of coronary artery disease and femoral artery aneurysm, diabetes, and possible Lyme
disease with arthritis. R. 12. Next, the ALJ held that Michael did not have an impairment or
combination of impairments that met or medically equaled a listed impairment. R. 13–14.

The ALJ concluded that Michael had the residual functional capacity ("RFC") to perform
light work except that he may occasionally climb, stoop, kneel, crouch, crawl, and perform
overhead reaching and tolerate occasional exposure to temperature extremes and hazards. R. 14.
However, the ALJ held that Michael could perform jobs that exist in significant numbers in the
national economy including marker, packer, and assembler. R. 19–20.

The ALJ ultimately concluded that Michael was not disabled. R. 20. On May 23, 2019,
the Appeals Council denied Michael's request for review. R. 1–6.

## ANALYSIS

Michael alleges that substantial evidence does not support the ALJ's RFC findings and
assessment of Michael's allegations.

### A. Medical History

Michael has a ninth grade education and testified that he stopped working at age 25. R.
224–225.

---

requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform
other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);
Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant
disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of
proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the
Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the
claimant's age, education, work experience, and impairments, to perform available alternative work in the local and
national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

### 1. Sciatica and Radiating Pain

In the nine months prior to Michael filing for benefits, he visited the emergency room several times with complaints relating to sciatica with radiating pain to the hip, leg, and knee. On April 21, 2015, Michael went to the Lewis Gale Emergency Room with complaints of knee, thigh, and back pain accompanied by bowel and bladder dysfunction. R. 297. James Harless, M.D. and David Floyd, PA–C, diagnosed Michael with lumbar radiculopathy. R. 298. On April 26, Michael returned with complaints of progressively worsening pain in the right thigh with radiation to the knee. R. 305. Thomas Bret Bolton, M.D., made a primary impression of lumbar radiculopathy, but found an MRI or CT scan unwarranted. R. 308–309. On May 2, 2015, Michael returned with complaints of lower back pain that radiated to his right hip and leg. R. 312. X–rays of the lumbar spine showed endplate osteophyte formation at the L3–4 level and facet hypertrophy and sclerosis at the lumbosacral junction consistent with mild facet hypertrophy. R. 311. Thomas G. Parrish, M.D., and Karolina Z. Coulter, P.A., diagnosed Michael with sciatica; described Michael's condition as improved; made objective findings that Michael had a normal gait, full range of motion of the back and lower extremities, negative straight leg raising, and absence of any reflex or sensory deficits. R. 314–315. They found that Michael's impression had improved and prescribed Toradol and Norflex. Id.

On May 13, 2015, Michael sought treatment at the Roanoke Memorial Hospital for intermittent right knee pain that had started after twisting it a month earlier and noted a recent tick bite. R. 316. X–rays of the right knee contained no indication of fracture, dislocation, or joint effusion. R. 318. Michael had a normal gait and full range of motion of the right hip, knee, and ankle with no indication of neurovascular deficits. Id. Michael was diagnosed with right knee pain and Lyme arthritis and prescribed Doxycycline. R. 319.

On May 21, 2015, Michael sought treatment for similar pain, including lower back pain with radiation, numbness, and tingling down the right leg, at Tri–Area Community Health, where he denied improvement with medication. R. 350–351. Jennifer Givens, N.P., assessed him with sciatica, fatigue, and muscle cramps and prescribed Tramadol. Id. At a June 4, 2015 visit, Michael complained of ongoing back pain with radiation to the legs. R. 355–357. He received Gabapentin for his sciatica and Nurse Givens referred him to an ophthalmologist. Id. He continued to complain of right leg weakness on July 2, 2015 and had a slow gait on July 30, 2015. His Gabapentin dosage was doubled to address these symptoms. R. 358–359.

On September 1, 2015, Michael visited orthopedic surgeon Caleb J. Behrend, M.D., for an evaluation. Dr. Behrend noted no evidence of motor or sensory deficits in the lower extremities, that Michael's standing posture was balanced in both the coronal and sagittal planes, that Michael's gait was unstable with tandem gait testing, and that Michael's lumbar region was tender to palpation over the midline. R. 330–333. X–rays of the lumbar spine showed Grade 1 retrolisthesis of L5 on S1, L4 on L5, and L3 on L4. Id. A MRI taken on September 28, 2015 showed mild disc space narrowing at C3–4 and C5–6 with mild effacement of the anterior cerebrospinal fluid space at both levels. R. 321–322. On October 8, 2015, Michael returned to Dr. Behrend, who noted that Michael had a stable gait, normal motor function, and no reflex or sensory deficits in the lower extremities and diagnosed him with back and neck pain with degenerative disease. R. 325–326.

On October 29, 2015, Michael saw April Hazelwood, N.P., at Tri–Area Community Health for a follow–up appointment. Nurse Hazelwood noted Michael had a diminished range of motion of the cervical/lumbar spine and a burning/tingling sensation in the lower extremities, and referred him to a pain management clinic for evaluation and treatment of cervical and

lumbar degenerative disc disease. R. 367–368. On February 17, 2016, Michael saw Carla Hart–

Tyner, N.P., for an evaluation at the Carilion Chronic Pain Management Clinic. R. 384–389.

Michael has engaged in physical therapy to address his sciatica and related radiating pain.

On March 9, 2016, Michael visited the Franklin Memorial Hospital for an initial physical therapy

evaluation. R. 380–383. Richard J. Finger, P.T., noted Michael presented with poor posture,

decreased cervical/lumbar range of motion, decreased strength in his lower extremities, and

recommended therapy twice a week for six weeks. Id. Records from physical therapy sessions

from March 14 to March 16, 2016 note fair compliance, some increased pain, and some

decreased pain. R. 376–380. On April 5, 2016, Michael was discharged from physical therapy

and advised to continue with a home exercise program. R. 455–457. At the time of discharge

from physical therapy, Michael had improved lumbar and cervical AROM from his initial

evaluation but continued to exhibit poor posture. Id.

On May 16, 2016, Michael reported sixty–percent pain relief since his last visit to Nurse

Harty–Tyner, who recommended that he continue using Gabapentin and Tramadol. R. 415–418.

On June 18, 2017, Michael stated that he only took Gabapentin occasionally. R. 544. On

December 23, 2017, Michael went to the emergency room at the Lewis Gale Medical Center

with complaints of lower back pain radiating into his legs that he attributed to an abscess on his

lower back. R. 482–484. He was discharged with a Bactrim prescription to treat a skin abscess.

Id.

On April 4, 2017, Michael sought treatment at the Franklin Memorial emergency room

for neck pain following a motor vehicle accident. R. 458. Wesley Robert Young, M.D., noted

tenderness over the cervical spine and a normal range of motion and intact strength in all

extremities, reported no acute CT scan findings, and prescribed Motrin and Flexeril for neck pain. R. 459–460.

Michael's other conditions include diabetes (R. 349–350, 352–353, 366, 559), a groin abscess that led to hospitalization (R. 510–511, 545, 559), and a neck abscess (R. 695–698).

**B. State Agency Expert Opinions**

On January 28, 2016, state agency physician James Darden, M.D., identified Michael's spinal disorders and ischemic heart disease as severe impairments but his hyperlipidemia, essential hypertension, and diabetes mellitus as non–severe impairments. R. 73. Dr. Darden found Michael capable of frequently lifting and/or carrying ten pounds; occasionally lifting and/or carrying twenty pounds, sitting about six hours in an eight–hour workday, or standing and/or walking about six hours in an eight–hour workday. R. 74–75. Dr. Darden found Michael had no manipulative, visual, communicative, or environmental limitations; was capable of frequent balancing and unlimited climbing of ramps and stairs; able to occasionally stoop, kneel, crouch, crawl; and able to occasionally climb ladders, ropes, and scaffolds. Id. On March 31, 2016, state agency physician Wyatt S. Beazley, III, M.D., limited Michael to needing to avoid concentrated exposure to hazards such as machinery and heights, but otherwise reached the same conclusions. R. 82–85.

**C. The ALJ's RFC Findings**

Michael argues that substantial evidence does not support the ALJ's physical RFC findings because the ALJ failed to properly consider Michael's impairments on a function–by–function basis. Specifically, Michael argues that the ALJ failed to make specific findings regarding Michael's need to lie down during the day or how his impairments cause episodes of pain that would require him to take breaks or absences from work. Consequently, Michael asserts that the ALJ failed to pose proper hypothetical questions to the vocational expert. The

Commissioner counters that the ALJ carefully discussed Michael's impairments, and the decision as a whole plainly shows that the ALJ considered the combined effects of all of Michael's impairments when assessing his RFC.

A function–by–function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities a claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and any record evidence contradicting the RFC determination. See SSR 96–8p, 1996 WL 374184 (July 2, 1996); see also Monroe v. Colvin, 826 F.3d 176, 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non–medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work–related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96–8p, at *7. In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function–by–function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ reviewed the objective evidence of record. R. 14–18. Then, the ALJ described in detail the conclusions reached by the state agency physicians, concluding that he "gives weight to the opinion of the State Agency consultants, as their opinions are supported by

the objective record of evidence as a whole." R. 18. The ALJ described Michael's subjective allegations, the relatively benign objective findings, Michael's conservative treatment, and the record as a whole as supporting the limited RFC in the opinion. R. 18. The ALJ concluded that Michael had the RFC to perform light work except that he can occasionally climb, stoop, kneel, crouch, crawl, perform overhead reaching, and tolerate exposure to temperature extremes and hazards. R. 14.

Substantial evidence supports the ALJ's determination of Michael's RFC, which reflects the opinions of Drs. Darden and Beazley, who found few limitations and reached conclusions that correspond with the RFC. The ALJ also referenced records showing Michael taking more medications than prescribed, engaging in social activities that include "excessive" walking, improving with physical therapy, continuing to work as a mechanic, and engaging in rigorous physical activities including pressure washing. R. 13. The ALJ discussed a lack of clinical metabolic or radiological evidence to support a severity of Michael's Lyme disease with arthritis consistent with the listed impairments, as well as no evidence of consistent diagnostic or suggested clinical testing recommendations due to Lyme disease. R. 14, 16. The ALJ also noted no evidence of ongoing cardiac process or complications and chest x–rays revealing no active cardiopulmonary disease process and routine cardiac evaluations yielding negative acute findings or abnormalities. Id.

An agency's reasons need not be "elaborate or even sophisticated, but rather…simply clear enough to enable judicial review." T–Mobile South, LLC v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015); accord Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (recognizing that the ALJ's explanation must be sufficient to allow the Court "to conduct meaningful appellate review"). Even where "an agency explains its decision with 'less than ideal clarity,' a

reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.' " Alaska Dep't of Envtl. Conservation v. E.P.A., 540 U.S. 461, 497 (2004) (citation omitted). Here, the ALJ provided sufficient clarity as to how he developed the RFC by indicating that he drew support from the state physicians and by citing evidence of Michael engaging in levels of activity that the RFC accommodates.

Michael argues that the ALJ failed to explain the amount of weight that he gave to the opinions of the state agency reviewing physicians or how he arrived at his weight determination. The regulations require an ALJ to evaluate state agency physicians, such as Drs. Darden and Beazley, using the factors outlined in the regulations and to expressly indicate and explain the weight accorded such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c). In evaluating the weight to give the opinion of a consulting physician, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ sufficiently explained the amount of weight he gave the opinions of the state agency physicians by adopting their findings that Michael could perform light work with few limitations. Notably, the record contains no other opinions from treating or consultative physicians. Thus, the ALJ had no need to distinguish the weight he gave these opinions from the weight he gave to any that reached different conclusions. See Laing v. Colvin, No. SKG-12-2891, 2014 WL 671462, at *7 (D. Md. Feb. 20, 2014) (no reversible error where ALJ did not assign specific weight to doctor's opinion but clearly considered and relied upon its findings) ; Vandermark v. Colvin, No. 3:13–CV–1467 GLS/ESH, 2015 WL 1097391, at *7 (N.D.N.Y. 11 Mar. 2015) ("[F]ailure to express a specific quantum of weight afforded to Dr. Graham's forensic opinions does not constitute a reversible error. That might be important in some cases. But here,

where there were no other forensic opinions against which to compare Dr. Graham's opinions, a specific–weight finding would have been superfluous."). And, the ALJ explained his basis for assigning these opinions weight: that they are supported by the objective evidence as a whole.

Significantly, Michael points to little, if any, evidence supporting the existence of greater limitations than those identified by the ALJ. The ALJ provided a thorough overview of the objective medical evidence and did not ignore objective contradictory evidence during the relevant period. The ALJ repeatedly considered Michael's pain and weakness in the lower extremities. R. 16–17. Moreover, Michael never explains how the evidence he points to creates greater limitations than those accounted for in the RFC. Further, Michael points to no evidence regarding needing to lie down during the day and pain requiring him to take breaks or be absent from work beyond his own subjective allegations, which I conclude the ALJ properly evaluated. See supra § D.

Overall, the ALJ's reasoning in making his RFC determination was specific enough to permit this Court to meaningfully review his decision. The court is "not left to guess about how the ALJ arrived at his conclusions." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). The ALJ's findings include a detailed summary of Michael's medical records (R. 15–17), the medical opinions (R. 18), Michael's subjective complaints (R. 17), and the ALJ's conclusions (R. 17–20). The RFC sets out Michael's limitations, which are supported by the opinions to which Michael assigned weight and the lack of evidence for more severe impairment. Contrary to Michael's assertions, the ALJ built a logical bridge between the evidence and his RFC determination, and there is more than a mere scintilla of evidence available to support it. It is not for this Court to re-weigh the evidence and come to a different conclusion.

**D.  Michael's Subjective Allegations**

Michael argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Michael asserts that the ALJ failed to cite medical evidence contradicting his allegations and failed to discuss how he concluded Michael's allegations are not entirely consistent with the record.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16–3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).13 First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's assessment of a claimant's statements, except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is

based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F.

App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ held that Michael's statements about the intensity, persistence, and

limiting effects of his symptoms are inconsistent with the record. R. 17. Reading the opinion as a

whole, the ALJ provided sufficient analysis to support this conclusion. The ALJ identified

multiple instances of noncompliance with treatment, such as Michael taking more medications

than prescribed, failing to present to physical therapy on occasion (including once due to "losing

track of time working on a car"), and not following his prescribed diabetes treatment while

incarcerated. R. 13, 16–17. The ALJ also held that "the record does not indicate [Michael] has

generally received the type of medical treatment one would expect for a totally disabled

individual." R. 17. In support, the ALJ pointed to Michael's "relatively benign objective findings

both prior to and after the alleged onset date." R. 18. The ALJ identified numerous examples of

such findings, which run contrary to the testimony provided by Michael that he needed to lie

down ten or fifteen times, each time for fifteen to twenty minutes, every day. R. 16–20 (noting

normal physical findings following radiological examinations, chest x–rays, and four clinical

assessments for back, neck, and knee pain); R. 48 (Michael describing lying down "10, 15 times

a day for "maybe 15, 20 minutes" each time). See Craig v. Chater, 76 F.3d 585, 595 (4th

Cir.1996) ("Although a claimant's allegations about her pain may not be discredited solely

because they are not substantiated by objective evidence of the pain itself or its severity, they

need not be accepted to the extent they are inconsistent with the available evidence…").

Michael cites to Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017), to

argue that a failure by the ALJ to acknowledge the extent to which Michael actually performed

the activities he listed or explain the extent to which they indicated Michael could persist through

an eight hour workday. See R. 16 (noting Michael working as a mechanic and engaging in pressure washing); R. 17–18 (noting that Michael reported engaging in activities including watching television, playing with his son, taking hot baths, attending medical appointments, visiting friends and family, maintaining personal care, cleaning bathrooms, driving, shopping, and managing household finances). In Brown, the Court found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test, and manage his own money. Id. at 271. Unlike in Brown, however, the ALJ here did not rely on his own observations or judgments. Instead, the ALJ both noted a totality of daily activities performed by Michael that far exceed those of the claimant in Brown and discounted Michael's allegations due to Michael's occasional noncompliance with treatment, Michael's normal physical examination findings, and Michael not receiving a level of treatment one would expect for someone with the disability he claimed to have.

At bottom, I find the record provides substantial support for the ALJ's decision; thus, the existence of evidence in the record that could support a different decision does not merit reversing the ALJ. Michael essentially asks me to reweigh the evidence that was before the ALJ and come to a different conclusion. However, it is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Michael's subjective complaints with substantial evidence, and that Michael is capable of performing work at the level stated in the ALJ's opinion.

**<u>CONCLUSION</u>**

For the foregoing reasons, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment, **DENYING** Michael's Motion for Summary Judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Glen R. Conrad, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter:  May 1, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge